1             IN THE UNITED STATES DISTRICT COURT

2           FOR THE MIDDLE DISTRICT OF GEORGIA

3                MACON DIVISION

4             _____

5  THE UNITED STATES OF AMERICA     )
                           ) Case No. 5:21-CR-09-02

6      vs.                  )
                           ) Macon, Georgia

7  PRENTICE BOND, DEFENDANT        )
  _____)

8

9                  CHANGE OF PLEA

10

11       BEFORE THE HONORABLE MARC T. TREADWELL
           UNITED STATES DISTRICT JUDGE

12

13               May 10, 2021

14

15  APPEARANCES:

16  FOR THE GOVERNMENT:      Marcela C. Mateo, AUSA
                      Noah Abrams, AUSA

17                      UNITED STATES ATTORNEY'S OFFICE
                      Post Office Box 1702

18                      Macon, GA  31202-1702

19  FOR THE DEFENDANT:       Reza Sedghi
                      SEDGHI LAW, LLC

20                      2870 Vineville Avenue
                      Macon, GA  31204

21

22  Proceedings reported stenographically
  _____

23               DARLENE D. FULLER, USCR
             Registered Professional Reporter

24               Registered Merit Reporter
               Certified Realtime Reporter

25       Georgia Certified Reporter No. 5641-3440-5157-6832

1    Macon, Georgia

2    Monday, May 10, 2021

3    9:40 a.m.

4                    P R O C E E D I N G S

5              THE COURT:  Our next case on the calendar is United

6    States versus Prentice Bond.  Is the government ready?

7              MS. MATEO:  Yes, Your Honor, the government is ready

8    to proceed.

9              THE COURT:  Ms. Mateo, are you taking the lead on

10   this?

11             MS. MATEO:  Yes, sir.

12             THE COURT:  All right.  Mr. Sedghi, is the defendant

13   ready?

14             MR. SEDGHI:  Good morning, Judge.  We are ready, Your

15   Honor.

16             THE COURT:  Y'all can remain seated under our new

17   procedures so that the microphones will pick you up a bit

18   better.  I understand that Mr. Bond wishes to enter a plea to

19   Counts One and Two of a Superseding Information.  Is that

20   correct?

21             MR. SEDGHI:  That's correct, Your Honor.

22             THE COURT:  Very well.  Good morning, Mr. Bond.

23             THE DEFENDANT:  Good morning, how are you doing?

24             THE COURT:  I'm fine, thank you.  You are represented

25   by Mr. Sedghi?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Mr. Sedghi, does your client wish to

3    enter a guilty plea?

4          MR. SEDGHI:  He does, Judge.

5          THE COURT:  Have you explained the legal implications

6    of what he is doing by pleading guilty?

7          MR. SEDGHI:  I have, Your Honor.

8          THE COURT:  To your knowledge, is he competent to

9    enter a free and voluntary plea of guilty?

10          MR. SEDGHI:  He is, Your Honor.

11          THE COURT:  Mr. Bond, in order for me to allow you to

12    plead guilty, I have to be sure that you are doing so

13    voluntarily, nobody is forcing you to do it, that you

14    understand the charge that you are pleading guilty to, that you

15    are competent and capable of understanding the consequences of

16    pleading guilty, and that there is a factual basis for your

17    guilty plea.

18          To do that, I will ask you some questions, and you

19    will be placed under oath to answer those questions.  If I ask

20    a question that is not clear, let me know, we will clear it up.

21    If you need to talk with Mr. Sedghi, let me know, and you can

22    do that.  Have you understood what I've said so far?

23          THE DEFENDANT:  Yes, sir.

24          COURTROOM DEPUTY:  Mr. Bond, please raise your right

25    hand as best you can.  Do you solemnly swear that your

1   testimony in this case shall be the truth, the whole truth, and

2   nothing but the truth, so help you, God?

3           THE DEFENDANT:  Yes, ma'am.

4           COURTROOM DEPUTY:  Thank you.  You can put your hand

5   down.

6           THE COURT:  Keep in mind, Mr. Bond, that you are now

7   under oath.  And if you answer a question falsely, you can be

8   prosecuted for perjury.  Do you understand that?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  What is your full name?

11          THE DEFENDANT:  Prentice Isiah Bond.

12          THE COURT:  How old are you?

13          THE DEFENDANT:  Thirty-six.

14          THE COURT:  How far did you go in school?

15          THE DEFENDANT:  I went to McEnvoy Middle School and I

16  went to Southwest High School.

17          THE COURT:  You can read and write, then?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Have you been treated for any mental

20  illness or drug addiction?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  Are you suffering from any other serious

23  illness?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Are you under the influence of any drug,

1    medication, or alcoholic beverage?

2            THE DEFENDANT:  No, sir.

3            THE COURT:  Is your mind clear?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Are you pleading guilty of your own free

6    will?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Has anyone attempted to force you, scare

9    you, or trick you into pleading guilty?

10           THE DEFENDANT:  No, sir.

11           THE COURT:  Are you pleading guilty voluntarily and

12   of your own free will because you are guilty of the crime

13   you've been charged with?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  By pleading guilty, Mr. Bond, you will

16   give up certain rights you have under the Constitution with

17   regard to a trial.  I will tell you what they are.

18           You have a right to plead not guilty to any offense,

19   and you would then be entitled to a jury trial.

20           At that trial, you would be presumed innocent, and

21   the government would have to prove your guilt beyond a

22   reasonable doubt.

23           You would not have to testify at trial unless you

24   chose to.  And if you did not testify or put up any evidence at

25   trial, the government could not use that against you.

1              You would have the right to an attorney at every

2    stage of your case.

3              You would have the right to see, hear, and

4    cross-examine all witnesses who would testify against you.  You

5    would have the right to present evidence and to compel the

6    attendance of witnesses by subpoena.

7              And you would have the right to appeal any guilty

8    verdict.

9              Do you understand these rights?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Do you also understand that by pleading

12   guilty, there will not be a trial, and you will give up those

13   rights?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Then I ask you this question, Mr. Bond.

16   Do you by entering a plea of guilty agree to give up the rights

17   I have just explained?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  You should understand, Mr. Bond, that

20   this is a felony offense, and a felony conviction can deprive

21   you of valuable civil rights such as the right to vote, the

22   right to sit on a jury, the right to hold public office, and

23   the right to possess a firearm.

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Do you understand that?

```
1                    THE DEFENDANT:  Yes, sir.

2                    THE COURT:  As we discussed, Mr. Bond, it is my

3       understanding you wish to enter a plea to charges in a

4       Superseding Information rather than charges in the original

5       Indictment.  Is that correct?

6                    THE DEFENDANT:  Yes, sir.

7                    THE COURT:  I need to talk with you about the

8       difference between an information and an indictment.  First,

9       have you talked with Mr. Sedghi about this?

10                   THE DEFENDANT:  Yes, sir.

11                   THE COURT:  Do you understand that you have a

12      constitutional right to be indicted by a grand jury?

13                   THE DEFENDANT:  Yes, sir.

14                   THE COURT:  And do you understand that to be indicted

15      by a grand jury means that the grand jury has found probable

16      cause that you've committed an offense?

17                   THE DEFENDANT:  Yes, sir.

18                   THE COURT:  And do you understand that unless you

19      give up your right to be indicted, you cannot be charged with a

20      felony offense unless a grand jury were to return an

21      indictment?

22                   THE DEFENDANT:  Yes, sir.

23                   THE COURT:  Do you understand that a grand jury

24      consists of at least 16 but not more than 23 people?

25                   THE DEFENDANT:  Yes, sir.
```

1              THE COURT:  Do you understand that in order to indict

2   you, at least 12 grand jurors would have to find probable cause

3   that you committed an offense?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Do you understand that for us to proceed

6   on the Information, you will have to give up your right to be

7   indicted?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  And do you understand that if you do give

10  up your right to be indicted, we will proceed just as if you

11  had been indicted?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Do you have any questions about this?

14             THE DEFENDANT:  No, sir.

15             THE COURT:  Has anybody made any threats or promises

16  to get you to give up your right?

17             THE DEFENDANT:  No, sir.

18             THE COURT:  Mr. Sedghi, do you know of any reason why

19  Mr. Bond should not waive that right?

20             MR. SEDGHI:  No, Your Honor.

21             THE COURT:  Has he signed a written waiver?

22             MR. SEDGHI:  He's about to, Judge.

23         (Defendant signing document at 9:46 a.m.)

24             MR. SEDGHI:  The waiver has been signed, Your Honor.

25             THE COURT:  All right.  Would you pass it up.

1          I find that Mr. Todd (sic) has knowingly and

2     voluntarily waived his right to be indicted.  I have accepted

3     that and we will proceed under the Superseding Information.

4          Mr. Todd (sic), I need to be sure that you understand

5     the charges that are in the Superseding Information.  First,

6     have you talked with Mr. Sedghi about the charges and any

7     possible defenses you may have to the charges?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  I need to be sure you understand the

10    charges.  Ms. Mateo, the prosecutor, will tell us what the

11    charges are and what the government would have to prove to

12    convict you of the charges.

13         THE DEFENDANT:  Yes, sir.

14         MS. MATEO:  Yes, Your Honor.  The Superseding

15    Information is a 2-count Information.  Count One charges

16    Conspiracy to Possess with Intent to Distribute and to

17    Distribute Controlled Substances; namely cocaine, cocaine base,

18    and marijuana.  This is a violation of Title 21, United States

19    Code, 846.

20         And it alleges that beginning on a date at least as

21    early as July, 2019, up to February, 2021, the precise dates

22    being unknown, the defendant did, in Bibb County, within the

23    Southern (sic) District of Georgia conspire with others to

24    possess with intent to distribute and to distribute a mixture

25    or substance containing a detectable amount of cocaine as well

1   as cocaine base and marijuana.

2          Count Two is a violation of Title 18, United States

3   Code, 924(c), which is Possession of a Firearm in Furtherance

4   of a Drug Trafficking Crime.  And it alleges that on or about

5   October 8th, 2020, in Bibb County, within the Middle District

6   of Georgia, the defendant did knowingly possess a firearm in

7   furtherance of at least one drug trafficking crime for which he

8   may be prosecuted; namely, the conspiracy that is charged in

9   Count One of the Superseding Information.

10         THE COURT:  Thank you.

11         MS. MATEO:  In order to prove these counts, Your

12   Honor -- specifically, Count One -- the government would have

13   to show the essential elements that (1) two or more people in

14   some way agreed to try to accomplish a shared and unlawful plan

15   to possess a mixture or substance containing a detectable

16   amount of cocaine, a Schedule II controlled substance; a

17   mixture or substance containing a detectable amount of cocaine

18   base ("crack"), a Schedule II controlled substance; and a

19   mixture or substance containing a detectable amount of the

20   marijuana, a Schedule I controlled substance.

21         The second element being that the defendant knew the

22   unlawful purpose of the plan and willfully joined it.

23         And the last element being that the object of the

24   unlawful plan was to possess with intent to distribute and to

25   distribute the controlled substances.

1              The elements necessary to prove the offense charged

2    in Count Two are that the defendant committed the elements of

3    the drug trafficking crime, prosecutable in federal court,

4    outlined in Count One; and, second, that the defendant

5    knowingly possessed a firearm in furtherance of that drug

6    trafficking crime.

7              THE COURT:  Thank you.

8              Mr. Bond, did you understand what Ms. Mateo just told

9    us?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Do you have any questions about the

12   charges against you?

13             THE DEFENDANT:  No, sir.

14             THE COURT:  I also need to be sure you understand the

15   potential consequences of your guilty plea.

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Ms. Mateo will tell us what the maximum

18   penalties are.

19             MS. MATEO:  Yes, Your Honor.  The maximum penalty for

20   Count One is imprisonment of not more than 20 years, a

21   supervised release term of at least three years, a $1 million

22   fine, and such restitution or forfeiture.

23             The maximum penalty for Count Two is not more than

24   life imprisonment, not more than five years of supervised

25   release, and a $250,000 fine.  Defendant's guilty plea to

1    Count Two will subject him to a mandatory minimum of five

2    years' imprisonment, which will be consecutive to Count One.

3              Also, the Court must impose a $100 special assessment

4    per count.

5              THE COURT:  Thank you.  Did you understand that,

6    Mr. Todd (sic)?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Do you have any questions about it?

9              THE DEFENDANT:  No, sir.

10             THE COURT:  You have a Plea Agreement with the

11   government.  Did you fully review that agreement and discuss it

12   with Mr. Sedghi before you signed it?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And have you signed it?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Look at the signature page, if you would,

17   and confirm that that is your signature.

18             THE DEFENDANT:  Yes, sir, it is my signature.

19             THE COURT:  Did you also initial each page?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Do you understand the terms of the Plea

22   Agreement?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Do you have any questions about it?

25             THE DEFENDANT:  No, sir.

1              THE COURT:  Does the agreement accurately state the

2       understanding you have with the government?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  With the exception of what is in the Plea

5       Agreement, has anybody made any promises or assurances to get

6       you to plead guilty?

7              THE DEFENDANT:  No, sir.

8              THE COURT:  You should understand, Mr. Bond, that

9       your Plea Agreement at this point is a recommendation to me,

10      and I can reject any recommendations in the Plea Agreement.

11      And if that were to happen, you could not automatically

12      withdraw your guilty plea.  Do you understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  There is in the Plea Agreement a

15      Stipulation of Facts.  These are the facts that will form the

16      factual basis for your guilty plea.  I need to be sure those

17      facts are accurate.  Ms. Mateo will tell us what they are.

18             MS. MATEO:  Yes, Your Honor.  Had this matter

19      proceeded to trial, the government would have proven beyond a

20      reasonable doubt that from on or about July, 2019, up until

21      February, 2021, law enforcement investigated Defendant's

22      participation in a drug trafficking organization which involved

23      cocaine, cocaine base, and marijuana distribution.

24             The organization's criminal activities were based out

25      of Macon, Georgia, in the Middle District of Georgia, and

1   extended into the Atlanta area in the Northern District of

2   Georgia.

3         During the investigation, law enforcement obtained

4   court orders to intercept the phone calls and text messages

5   from cell phones belonging to co-defendants.  In October, 2020,

6   law enforcement executed residential and premises search

7   warrants and seized controlled substances, drug trafficking

8   tools of the trade, as well as U.S. currency.

9         Furthermore, the government would have proven that

10  Defendant Bond and Xavier Cross utilized cellular phones to

11  communicate with Travis Robinson in order to purchase kilogram

12  quantities of cocaine.  The defendant, along with Xavier Cross,

13  would obtain cocaine from Travis Robinson in the Atlanta area,

14  and then redistribute the cocaine to other individuals within

15  the Middle District of Georgia.

16        Additionally, the defendant would "cook" the cocaine

17  into cocaine base, which would then be distributed to other

18  individuals.

19        The defendant maintained a residence at 2487 Rosen

20  Avenue in Macon, Georgia, where he stored and distributed

21  cocaine, cocaine base, and marijuana.

22        The defendant utilized this location, along with

23  Xavier Cross and Chester Hall, who distributed controlled

24  substances on the behalf of the defendant and also Co-defendant

25  Cross.

1          Furthermore, the defendant utilized cellular

2    telephones to communicate to Charles Seang regarding the

3    purchase of marijuana, which Defendant would then pick up from

4    Seang's residence in the Northern District of Georgia and bring

5    to the Middle District of Georgia where he would direct others

6    to redistribute it.

7          Finally, on or about October 8th, 2020, law

8    enforcement executed a search warrant at the defendant's

9    residence located at 1774 Timark Drive, Macon, Georgia, and a

10   mixture containing a detectable amount of cocaine was seized

11   along with various firearms, to include a Glock Model 23, a

12   Mini-Draco, a Taurus model pistol, and a Raven Arms Model .25

13   caliber pistol.  Each of these firearms had been previously

14   transported in interstate and foreign commerce.

15         The defendant admits and agrees that from on or about

16   July, 2019, through on or about February, 2021, he conspired

17   with others to possess with the intent to distribute cocaine,

18   cocaine base, and marijuana.

19         Additionally, Your Honor, the parties agree and

20   stipulate that for the following -- the following for purposes

21   of relevant conduct under the sentencing guidelines applies.

22   First, that the amount of drugs attributed to the defendant is

23   at least 5 kilograms but less than 15 kilograms of cocaine.

24   Also, that the defendant shall receive a 2-level increase for

25   maintaining a premises for the purpose of distributing a

1    controlled substance.  And also that the defendant shall

2    receive a 3-level increase as a manager or supervisor of

3    criminal activity that involved five or more participants.

4    These are all enhancements under the sentencing guidelines.

5           The goverment would have proven this at trial with

6    recorded phone calls and texts, phone records, and witness and

7    expert testimony, drug analysis reports, documentary and

8    physical evidence, photographs, and other evidence obtained

9    over the course of the investigation.  That is what the

10   government would have proven, Your Honor.

11          THE COURT:  Thank you.

12          Mr. Sedghi, do you agree that the government can

13   prove these facts beyond a reasonable doubt?

14          MR. SEDGHI:  Yes, Your Honor.

15          THE COURT:  And, Mr. Bond, do you agree that these

16   facts are accurate?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Do you understand, Mr. Bond, that you are

19   not being sentenced today?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And do you understand that your

22   Stipulation of Facts with the government is not binding on me

23   until I accept the Plea Agreement?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And do you understand that the Probation

1   Office will conduct an investigation and prepare a presentence

2   report to assist in your sentencing?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Do you understand that something could

5   come out in that investigation that could affect the length of

6   your sentence?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  I will defer acceptance of your Plea

9   Agreement until after the presentence report has been prepared.

10          Mr. Bond, also in the Plea Agreement is a part that

11  gives up your right to appeal and your right to seek review of

12  your sentence with some exceptions.  I want to talk with you

13  about those exceptions for a moment.

14          But first, have you talked with Mr. Sedghi about the

15  appeal waiver and the review waiver in the Plea Agreement?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you understand that in the Plea

18  Agreement, Mr. Bond, you give up your right to appeal with

19  three exceptions?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  The first exception is that you can

22  appeal your sentence if I give you a sentence that is longer

23  than the guideline range I have calculated.  The second is you

24  can appeal your sentence if I give you a sentence that is

25  longer than the statutory maximum.  And, third, you can appeal

```
 1    your sentence if the government files an appeal.

 2               THE DEFENDANT:  Yes, sir.

 3               THE COURT:  Do you understand all that?

 4               THE DEFENDANT:  Yes, sir.

 5               THE COURT:  And with regard to seeking review of your

 6    sentence, which is sometimes called "habeas corpus" or

 7    "collateral review," you can do that only on the grounds of

 8    ineffective assistance of counsel.  Do you understand that?

 9               THE DEFENDANT:  Yes, sir.

10               THE COURT:  Do you have any questions about the

11    appeal waiver or the review waiver?

12               THE DEFENDANT:  No, sir.

13               THE COURT:  Then, Mr. Bond, I ask you this question.

14    Do you freely and voluntarily give up your right to appeal and

15    your right to seek review of your sentence except as stated in

16    the Plea Agreement?

17               THE DEFENDANT:  Yes, sir.

18               THE COURT:  When you are sentenced, Mr. Bond, we will

19    be considering the advisory sentencing guidelines.  Have you

20    talked with Mr. Sedghi about the sentencing guidelines?

21               THE DEFENDANT:  Yes, sir.

22               THE COURT:  Do you understand that I will not be able

23    to determine what your guideline range is until after the

24    presentence report has been prepared?

25               THE DEFENDANT:  Yes, sir.
```

1              THE COURT:  Do you understand that based upon the

2    findings of fact that I make, the sentence I give you could be

3    different than any estimate somebody may have given you?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Consequently, do you understand that you

6    should not plead guilty based on any such estimate?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Do you also understand, Mr. Bond, that

9    after I have determined what your guideline range is, I have

10   the authority under some circumstances to give you a sentence

11   that is longer or shorter than the guideline range?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Have you had a full opportunity to talk

14   with Mr. Sedghi about pleading guilty?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Are you satisfied with the advice he has

17   given you?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Based on what you know now, has he

20   represented you in a proper way?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Do you have any questions about anything

23   we have done so far?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  Do you -- is there any confusion in your

1   mind about what we have done?

2           THE DEFENDANT:  No, sir.

3           THE COURT:  You will have an opportunity to speak at

4   your sentencing hearing, but is there anything you would like

5   to say now?

6           THE DEFENDANT:  No, sir.

7           THE COURT:  Mr. Sedghi, is there anything I should

8   cover in the colloquy that I have not?

9           MR. SEDGHI:  No, sir, Your Honor.

10          THE COURT:  Do you have any comments?

11          MR. SEDGHI:  No, Your Honor, not at this time.

12          THE COURT:  Ms. Mateo?

13          MS. MATEO:  Nothing from the government, Your Honor.

14          THE COURT:  Mr. Bond, how do you plead to Counts One

15  and Two in the Superseding Information?  Guilty or not guilty?

16          THE DEFENDANT:  Guilty.

17          THE COURT:  Are you, in fact, guilty of those

18  charges?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Do you now admit that you committed the

21  acts described in the Information which Ms. Mateo told us about

22  earlier?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Does the government know of any reason

25  why the Court should not accept the defendant's plea?

1          MS. MATEO:  No, Your Honor.

2          THE COURT:  Does the defense?

3          MR. SEDGHI:  No, Your Honor.

4          THE COURT:  It is the finding of the Court in the

5     case of the United States versus Prentice Bond that Mr. Bond is

6     fully competent and capable of entering an informed plea, he is

7     aware of the nature of the charges and the consequences of the

8     plea, and his plea is a knowing and voluntary plea, supported

9     by an independent basis in fact, containing each of the

10    essential elements of each offense.  His plea is therefore

11    accepted and he is adjudged guilty of those offenses in the

12    Superseding Information.

13         Mr. Bond, as I said, the Probation Office will now

14    prepare a presentence report.  It is important that that report

15    be accurate, and you should cooperate with the officer.  Any

16    failure to cooperate could result in an obstruction enhancement

17    of your sentence or the denial of acceptance of responsibility,

18    which would otherwise reduce your sentence.

19         You will have an opportunity to review that report

20    and file any objections you may have to the report.  You will

21    be asked to give information for the report, and Mr. Sedghi can

22    be present when that is done if you wish.  Also, you and

23    Mr. Sedghi will have an opportunity to speak on your behalf at

24    your sentencing hearing, which is set for July 28 at 2:00 p.m.

25         Do we have the Change of Plea Form and the Plea

1    Agreement?

2            MR. SEDGHI:  Yes, Your Honor.  Mr. Bond is about to

3    sign it, Judge.

4            THE COURT:  All right.  Anything further from the

5    government?

6            MS. MATEO:  No, Your Honor.

7            THE COURT:  Anything further from the defense?

8            MR. SEDGHI:  No, Your Honor.

9            THE COURT:  That concludes this matter, then.  Thank

10   you, all.

11           MR. SEDGHI:  Thank you, Judge.

12        (Proceedings concluded at 10:03 a.m.)

13                       END OF RECORD

14

15

16

17

18

19

20

21

22

23

24

25

1        CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5            I, Darlene D. Fuller, Federal Official Realtime Court

6    Reporter, in and for the United States District Court for the

7    Middle District of Georgia, do hereby certify that pursuant to

8    Section 753, Title 28, United States Code, that the foregoing is

9    a true and correct transcript of the stenographically reported

10   proceedings held in the above-entitled matter and that the

11   transcript page format is in conformance with the regulations of

12   the Judicial Conference of the United States.

13

14            Dated this 13th day of October, 2021

15

16                        *Darlene D. Fuller*
                 _____
17               Darlene D. Fuller, RPR, CRR, RMR
                 NCRA No. 5803
18               Federal Official Court Reporter
                 Georgia CCR 5641-3440-5157-6832
                 Michigan Certification CSR-0929
19

20

21

22

23

24

25